Final case this morning is number 22-1795, Colleen Reilly v. City of Harrisburg. Mr. Staver. Good morning, your honors. I'm Matt Staver for the appellants. I would like to reserve two minutes for rebuttal. Granted. May it please the court, on behalf of the appellants, I respectfully request that this court reverse the summary judgment below because the ordinance of the city as interpreted and between the district court's order with regards to the facial aspect of this particular ordinance and this court's similar ruling in Bruny 2 regarding a similar ordinance in Pittsburgh in which both said that on its face very similar words were not content-based and they did not You're making here what is in effect a claim that there is a policy or a custom of Harrisburg to deter a person's first amendment rights. Now clearly there was one incident in July of 2014 and there appears in the record to be one misstatement by the city solicitor. How does that rise to the level of a policy of the city or a custom of the city to take away people's rights? In two ways, your honor. In fact, what we have is a history of enforcement before the district court's order, before this court's Bruny decision, in the same kind of position after the district court's narrowing decision and this court's decision in Bruny 2 in 2019. So what we have is two 30b6 witnesses. The solicitor specifically states that and this was not only done before but also they relied on this after this court's decision in 2019. Solicitor's statement as a 30b6 witness on the interpretation application and enforcement of this ordinance says that it literature and talk in normal one-on-one conversations. He also said that if two people are having a conversation, they are congregating if they are talking about anything of substance. He also then ratified the 2014 enforcement in 2016 when he said go back and enforce it as it was before 2015. They had a an abatement following the Supreme Court's decision so he ratified what was happening before. The testimony is unrebutted that Plaintiff Riley in 2014 was approached by a police officer and the notation of the police officer was unrebutted that he advised she was in violation of the order by entering into the buffer zone. The second 30b6 witness again these 30b6 witnesses were on the interpretation application and the enforcement of the order is the police captain and he said it applies to a person in conversation with a patient entering or leaving the clinic that it applies with a person who initiates a conversation about abortion and that he also I believe his testimony as a 30b6 witness ratified the 2014 enforcement. When asked about that he said it was quote the proper cause by a very competent police officer so he's ratifying what happened in 2014. So you have two 30b6 witnesses number one number two in terms of who were those witnesses that was the police captain and it was the city solicitor now that you was the captain or was it was this moody this was a moody moody I thought he confirmed his deposition that there was no city enforcement policy he said they had no one particular written statement the it was up to the police officers the problem with that though is he knew what happened in 2014 and he ratifies and he says what happened in 2014 when he testified in 2016 he said that that actually or later I should say he says that that was the proper cause to have this person. What cases do you have support the proposition that when an officer or solicitor testifies under 30b6 as a 30b6 deponent that that makes policy or or you use the word ratify but how do we how do we know what cases tell us that that's an actual policy? Well there's some cases that we cited one of them is a ninth circuit court of appeals decision there's others that particularly regarding to the issue of 30b6 testimony that 30b6 testimony is for that very purpose where we asked for experts for the interpretation application and enforcement of the order and they gave us two it's a designee 30b6 designees speak on behalf of the entity certainly but I think speaking on behalf of is something qualitatively different than establishing policy so what what citate what merely by virtue of being the designee whatever the designee says is therefore policy. The case I believe or one of them that we cited in our brief was the Hoy case I believe that was out of the ninth circuit when we talk about the policy specifically as it relates to 30b6 witnesses but it's not just the 30b6 witnesses although we have two and they're unanimous it's also the present they continue to affirm the same policy and practice also statements by counsel before this court there was a statement by counsel during a prior iteration of oral argument before this court that leafleting in the buffer zone of information about a law firm was not a violation but leafleting anything about abortion was a violation judge Jordan asked is that now that's changed though I mean we've we've taken a narrow construction of the statute you have but the city has not in fact your honor you said in your concurrence and bruni too something I think is very instructive for what's going on continually now you said before today the city referring to Pittsburgh broad and amorphous interpretation of the ordinance risk allowing those employees to engage in speech that others could not that sort of disparate treatment would now be content or viewpoint based that was 2019 so now they're still doing that and in fact they continue they've never distanced themselves from these content-based decisions or statements by their 236 if this were true we wouldn't be we wouldn't be looking at an incident in 2014 there would be a complaint talking about all of the mistreatment that your clients faced in 2020 in 2021 in 2022 and we don't have any of that here that's because they didn't why are we it just this case seems anachronistic because if what you say is true I don't know whether it's true or not but if Harrisburg is enforcing a policy or a custom today that is inconsistent with our court's precedents regarding the first amendment rights of your clients then let's let's see the case but that's not this case this case is about one incident in 2014 it's about two incidents actually 2014 with plaintiff Riley and one in 2017 and during the preliminary injunction hearing when what was the one in 2017 when when um plaintiff bitter uh went into the zone to hug a woman who was crying then during the plane the preliminary injunction hearing council continued to say you violated the ordinance just by merely entering the buffer zone no officer told her that she was in any way of violating there was no warning given to her no but all of the officials every single official that's ever spoken on this case is unanimous with regards to the content-based application or understanding this and in fact on page 32 apparently fearing up until now this is the first time they've done this in their brief because up until now it's always been that it's based upon information based on content as to how this is being enforced inside the zone then on page 32 it says this of their brief any person including the plaintiffs may seek to share health care information moral instruction options regarding adoption or other messages outside of the buffer zone in those cases the ordinance does not apply the ordinance only applies if the communications of any kind now occurs inside the buffer zone so they've moved from a content-based application inside the buffer zone to the very first time in their brief now before this court that it bans every kind of speech inside the buffer zone and that clearly is contrary to this court's in your concurrence judge hardeman in bruny too i didn't get that impression at all i thought that indeed women can go into that zone and do and confer uh with other women regarding the right or not having abortion that's what the clear impression that i get that's what the district court says based on the face that's what this court says on a similar ordinance in pittsburgh and bruny too but that's never been the city's application or interpretation and that's both before the district court's order and after so you talk about ratification what i don't think you respectfully i don't think you addressed my my concern previously which is if what you just said is true the city is not respecting your client's first amendment rights to sidewall council then there should be myriad instances of this happening last week last month last year um where where are those allegations where where is that because they have there's some case pending right now in the middle district we're not aware of they don't enter this zone uh they stay far away from it because based upon they i'm sorry the plaintiffs in this case and others because they know why because i mean our our precedents i think are pretty clear your president's right to sidewalk council right isn't that i mean i i didn't um i i wrote a concur you citing my concurrence but judge kraus wrote the majority correct right so doesn't judge kraus's majority opinion uh citing the doctrine of constitutional avoidance um take a narrowing construction of the client's first amendment rights correct that's based on a facial challenge and so on a facial challenge this court upheld the pittsburgh ordinance and also the district court upheld this ordinance on its face but that's not how the city has applied it both before during and after all of that litigation so the city has not heeded either the district court's facial interpretation we don't we don't know whether the city's heated it because you just said your clients won't enter the zone and apparently apparently um miss riley won't enter the zone based upon something happened that happened to her in 2014 um and there's been a lot of of legal change in this area between 2014 and now correct that's true there has but she won't enter the zone because of what happened to plaintiff bitter in 2017 she won't enter the injunction and how the city said that that was a violation of the buffer zone by entering it and in 2021 2022 the city continued to take the same position so they know what the position of the city specifically is that position the position of the city is twofold up until the answer brief the position of the city is that the buffer zone prohibits information that's of substance regarding abortion in the buffer zone that all of its prohibits the exchange of information with those who go to that area whether it's yes whether it's leafleting or talking if it's something about substance or abortion it prohibits it if it's where's that policy written it's not a written policy it's not a custom it's a custom all right so then where where are the indicia or where are the episodes what are the episodes that show us that this is in fact a custom you have an unbroken chain you have the 2014 citation you have the 236 witnesses you have all the briefing at the district court level and the appellate court level you have oral argument before the district court oral argument before this court and you have it in the current brief if it's so it's just a custom i mean isn't that something that the the folks there can just ignore in other words it's not a law it's not a regulation you say it's a custom it's their custom of interpreting this policy and they dare not ignore that because they don't want to be arrested you know i would answer to your question that the second aspect of it up until this brief was that they look at matters of substance and matters of substance are restricted in the zone but other things like the law firm are not now they you mean by following a custom there's they may subject themselves to an arrest by by following the city's custom the city's unbroken custom will cause them to be arrested i should have said ignoring the city's director because they they do have a right to confer they do have a right to be there uh within 20 feet if i'm not mistaken well they they they do do that outside of the zone but we're talking about inside the buffer zone inside the zone is about 20 feet uh to the door yeah and in this particular one it's up to 70 feet in certain places but it's a 20 foot buffer so they can go there and they can confer with other women who are about to you know outside of the zone okay not into the zone the only other thing that i was going to say is just to reiterate that in their brief on page 32 they've now extended this to say that no communication on any of the things adoption or anything can occur inside the zone and they make that argument on the basis that they're trying to avoid content basis that it says well it's content because we don't allow anything in the zone and that clearly is contrary to the district court's decision it's contrary to bruni to this court's decision that this kind of leafleting and one-on-one peaceful communication is permitted even inside the zone so with that i would respectfully request this courtroom first thank you we'll hear you on rebuttal mr staver mr norfleet i was going to say good morning i'm not sure it's still okay good morning you're good judges uh my name is andy norfleet i'm here before you uh this morning on behalf of the city of harrisburg uh judges we would respectfully request that uh the court does two things affirm the district court's grant of summary judgment on behalf of the city of harrisburg and also affirm the district court's denial of summary judgment for the the plaintiff's ordinance was it went 2012 correct your honor and does harrisburg interpret the ordinance as prohibiting peaceful one-on-one conversations about abortion your honor that that has already been decided uh by this court uh the this court we know what we decided the question is what are you doing about it yeah what are you doing about it i mean actually speaking daver said that his clients can't enter the zone to sidewalk council is that true uh your honor miss council also said that in 2014 there was a citation issued there there was no citation issued uh and i will agree with uh i believe it was judge ambrose and judge fuentes who asked direct questions about and you and yourself judge hardeman is where are the other instances if harrisburg well they don't have them because they're afraid to get arrested and so the question is what what is this what is the city's position regarding the ability to peacefully sidewalk what we've referred to in our cases as sidewalk council within the buffer zone your honor i again would would say that the city has never cited anyone for peacefully counseling in the in the zone and and your honor to to go off so the answer is that the as i understand that that the city does not prohibit peaceful one-on-one conversations about yes or no right it it is your honor but we are we're being put in a position we where we are re-litigating issues that that have been no no i'm just i'm just asking you you're correct that this is from a prior case we're talking about monel in this case i'm just trying to lay the facts the city does interprets the ordinance as allowing peaceful one-on-one conversations about abortion within the buffer zone is that correct the the city reviews the ordinance your honor is prohibiting four things and and none of those four items that are listed in the ordinance include peaceful sidewalk counseling what what are the four things uh picketing your honor congregating uh the other two just ran right excuse me but it's also true that previously your your position on con you took a strong position on congregating that would have prohibited sidewalk counseling prior to judge krause's opinion in bruny too correct are you referring to the solicitor's statements your honor yes and and just the city's statements in general okay well if we're talking about the the statements of solicitor grover when when he was asked what number of of people might uh constitute congregating i think your your honor said it as as i would have that the solicitor is the solicitor the solicitor is not a a policy maker uh so regardless of of what the solicitor might have said during a deposition regardless of what the solicitor might have said during an injunctive hearing as the district court and this court have recognized that that those statements have no bearing on the the facial application which again has been upheld and and and again i i feel like we we are here defending the facial constitutionality of an ordinance that the district court and this court has already said is facially constitutional so the only issue that we're as applied challenge isn't it as to riley and bitter that's our position your honor but sitting here today and reading the briefs from from the appellants that they want to re-litigate the issue of whether or not the the ordinance even is is facially constitutional which we shouldn't be doing trying to decide this case which i think requires us to determine whether under monel the city could be liable for a policy or practice or custom correct and there's no written policy well this i i guess i should ask mr staver but i'm a little confused because they do refer to the policy but as you point out we've already written opinions about the policy being facially okay under a narrowed construction that in a roundabout way conceded that his clients can go into the buffer zone and and uh counsel uh women as they see fit as long as they don't violate one of the four prohibitions in the ordinance correct correct uh your your honor i again i think there were a number of questions asked about where is the written policy uh the the the plaintiffs have never put forth a written policy uh that the that the city is somehow not uh following and when we're looking at a a single incident case which this is your honor it's a single incident plus one statement misstatement of the solicitor grover on page eight 753 well i don't even i wonder if that's even a misstatement because part of what's confusing about this procedural posture is that the 30b6 opponents were testifying during a live case before our opinions have sort of i would hope have given some guidance to both your client and mr staver's clients about how to proceed um right so some of those 30b6 statements were or all of those 30b6 statements were made when the law was was less uh clear in this area correct correct and and your honor going back to a question that you asked from 2012 to 2014 there were no instances of anyone who was peacefully sidewalk counseling having any interaction have there been other citations for congregating i don't believe so or other behavior have there have there been um physical altercations or anything like that that resulted in citations yeah i believe that there may have been citations your honor for physical contact but but again what's the time frame ballpark on those if you know i don't your honor but your honor well well before we did or before we decided brooney yes yes your honor have there been any citations since we've decided since our opinion in brooney was issued not that i'm aware of your honor and none that have been raised by plaintiff but your honor going back to to this question of this single incident and is the city somehow misapplying this as applied to the the the plaintiffs if they are your honor it's the worst application in in the history of of applications and again i go back from from 2012 to 2014 no instances 2014 one instance by one singular officer from 2014 until now no other instances so there there has been uh counseling in in the facility and there has been no incident at all you're counseling by anti-abortion individuals i mean it would be unfair for me your honor to say that i know the answer to that question i can only tell you that we're not aware of anyone who has been prohibited nor have there been any complaints filed i i don't know what's going on outside of the the planned parenthood based on prior proceedings i'm loathed to potentially admit to something that i don't know for it to come up later to say well you know norfleet said they're they're still doing this or not doing this outside of the of the planned parenthood clinic and i just i don't know but it's fair to say the crux of your argument is that one incident almost a decade ago does not a does not make a policy and not only that your honor but it is the plaintiff's burden to to bring forth the the policy or the custom which they have not done what should we view riley and bitter differently in terms of justiciability does bitter have any injury in fact is there a distinction between the two or do you lump the two together i think that's a that's a interesting question your honor so when i was sitting and listening i will note your honor that miss riley has admitted that even before and after the ordinance was was adopted by the city she would ignore it during her deposition she said before the ordinance was adopted i stood two to three feet away from people once the ordinance was adopted i would i would look for police cars i would stand two to three feet away from people if i saw a police car i'd get two to three to get 20 feet away and then when the police left i'd go back to being two to three feet away from them so if miss riley is afraid of being prosecuted in this by this ordinance that is an odd way to protect oneself from being afraid of the the ordinance simply to watch for police cars and do what you you do until the police leave but going back to to your your question uh your honor about looking at uh and looking at riley the same or different uh yeah i think of the two your honor certainly biter has has shown no injury in in in this case neither has been cited neither has been convicted but riley asserts that the police officer enforced the ordinance against her that's that 2014 incident the only incident but i don't see anything in the record where bitter biter or bitter how we pronounce the name was um that that she has anything like that she has simply said that she's concerned about getting in trouble based upon riley's incident in full candor to the court your honor i think if if you scour the record i think miss biter said at one time she was walking between two properties and the property owner called the police uh an officer asked her what are you doing she said i'm just walking the officer said have a nice day she described that interaction as a pleasant conversation and there was no discussion during that meeting about an ordinance but i did want to bring that to your attention your honor no further questions anything further thank you mr norfleet we'll hear rebuttal from mr stater thank you and we would again your honor ask that you affirm the decisions of the we understand thank you thank you may it please the court uh judge hardeman regarding the 30b6 witnesses yes they were done before bruny 2 but they were submitted after bruny 2 so they still relied upon those in 2021 and 2022 for the motion for summary judgment the city could have resolved this fairly simply with just a very yes or no as a result of this court's decision in bruny 2 where would they have given the yes or no and how would they have said it in the summary judgment uh filings in fact in support of summary judgment they gave the 230b6 witnesses again and they gave no contrary declaration or affidavit that says we no longer based upon bruny 2 will enforce this against peaceful leafleting and one-on-one communications in the zone except if you do one of those four things nothing was ever you can get that admission in the district court but you just got it here you know mr norfleet uh was quite clear that they're only enforcing the four types uh and that doesn't include sidewalk counseling your honor in their brief they say the ordinance only applies if the communications of any kind occurs inside the buffer zone that's on page 32 but so i we we can't go back and litigate what this court has previously cited what we're deciding today is a monel claim is there a policy of harrisburg or is there an entrenched custom of harrisburg to inhibit the first amendment rights of those who wish to do sidewalk counseling outside the abortion clinic judge amber i think that there is an unbroken custom and practice by the city from 2014 2017 the 230b6 witnesses every statement by council below multiple times in the briefs and in fact we have cited many of those on page 28 and 29 of our brief but but what we have is in 2014 was an officer who stated misstated that the buffer zone was 25 to 30 feet he's wrong and also that he didn't want any discussion within the buffer zone with respect to counseling uh in in a normal tone and so he was incorrect but what other incidents of an officer incorrectly enforcing the ordinance post 2014 well you have the 30b6 witness moody the captain who said that that was the proper application of it back in 2014 so he ratifies what the officer did and you also have the 2017 incident and at the preliminary injunction but as judge hardeman noted there's a whole lot of water over the dam between 2014 and today correct but those are the same 30b6 witnesses that they that they put forth after bruny 2 in support of their motion for summary judgment so they didn't change their position after bruny 2 and that i think is the real issue we don't know your clients haven't even tested it you're saying this is almost like uh who goes first you're saying your clients are afraid to sidewalk counsel in the buffer zone because they're afraid they'll be cited or arrested because of what they have already experienced and the city's position on this and they don't have to actually be arrested their fear of being arrested or being cited which is in riley's case and also in bitter's case because the council for the city when was questioning bitter at the pi hearing actually said by going in you violated when was that hearing held that was uh before i believe the 2019 it was before the summary judgment uh so that would have been before the i i just can't imagine if if your clients tomorrow went inside the buffer zone to sidewalk council and they got any kind of trouble from the the city of harrisburg i mean it's they're just inviting a 1983 action especially considering you know council's statements regarding what this ordinance does and doesn't do in light of this court's decision in bruny 2 well your honor i understand that's what this court said in bruny 2 but i don't believe based upon the history that that's how the city is interpreting and even the question asked of council was a yes or no and it took a long time to even well it was roundabout but we got there we we got we got an answer that the sidewalk counseling is allowed within the buffer zone and what you can't do is you can't get violent you can't um pick it does that one admission then negate page 32 of their brief before school page well page 32 of their brief i just reread and and and that is the subject that's being discussed at page 32 is whether this is content-based or not that's the nature of the conversation that occurs and and um i agree that they point out that the ordinance does not apply outside the buffer zone um which um is a little ambiguous it could be read it doesn't speak to what the ordinance does within the buffer zone well it does our opinion speaks pretty strongly yours does i understand that completely and if that's the way it would be applied we wouldn't be here if that's the way they would say they don't know how it's going to be applied because we're talking about something that happened almost a decade ago but in the same page 32 your honor the ordinance only applies if communications of any kind occurs in the buffer zone right i don't mean as an attorney i can't acknowledge i can't counsel my client this is their position so go in there and violate it well no well i i read that a little differently than you i mean the ordinance correct me if i'm wrong still prohibits picketing within the buffer zone correct correct all right so if your clients instead of sidewalk and this is an issue that we've we've been dealing with as a court they're very focused on the nature of the engagement between the folks that you represent and the folks that are entering these facilities and um i think we've been pretty clear that that peaceful sidewalk counseling of the type that your clients would like to do and that bruny would like wanted to do is protected first amendment conduct what is not protected conduct is uh physical altercations picketing um so the ordinance does apply if your clients tomorrow were to go in and picket right and block the entrance to the facility then you've got a problem you you are let your clients are likely to be uh cited or prosecuted under the ordinance correct correct all right but the converse is equally true if your clients engage in peaceful sidewalk counseling within the buffer zone then they can't be cited or prosecuted and if the city does that in derogation of this court's opinions then i think we're going to see you again or the district court in harrisburg is going to see you pretty quickly on 1983 action your honor i agree with all of that i this would be completely different if harrisburg had acknowledged bruny too but they have not they submit the same information which goes back to 2014 and in their brief before this court they say none of those because none of this is picketing congregating it's as a person could seek to share health care information moral instruction options regarding adoption or other messages outside the buffer zone in those instances the ordinance doesn't apply the ordinance only applies if the communications of any kind not picketing congregating boisterous any kind occurs inside the buffer zone so that's what they said and that's the same kind of statement that they have said from the very beginning in writing in their oral advocacy before this court in the lower court and in their 30b6 hearing witnesses and they have never altered that at the summary judgment stage and even at this stage they still say that and that is contrary to bruny too but that's what our clients i respectfully submit are dealing with with regards to the city's built-in practice that has never changed as it should have when this court released bruny too in 2019 are you aware of any altercations at all since let's say 2017 uh regarding the the women who are speaking to others regarding the abortion issue i don't know of any altercations no and i don't know of anybody going in the zone and certainly our clients have not gone past the 20 foot so since 2017 has been pretty quiet pretty much as we had anticipated as far as i understand that's correct uh and any activity would be outside of the zone but i don't know of any altercations or boisterous activity even outside of the zone certainly nothing at least relating to our clients is inside the zone it's a 25 foot zone it's a 20 foot zone 20 foot 20 foot zone thank you your honor request that you uh reverse below thank you mr savers thank you mr norfleet the court will take the matter under advisement